21-2636 Harris v. United States Good morning. Good morning, Your Honor. May it please the Court, my name is Daryl Fields. I represent Thomas Harris. I'd like to start with the issues briefed in the supplemental brief concerning Hobbs Act robbery. We contend that the Supreme Court's decision in Taylor compels a conclusion that Hobbs Act robbery isn't a categorical match in the force clause of 924C. Taylor instructs that to conduct this... Have we decided this question after Taylor? Yes, Your Honor. I'm sorry. Have we decided this question after Taylor? In McCoy, this Court did say that Hobbs Act robbery is still a crime of violence, and it cited Taylor. But the defendants in Taylor did not argue to the Court under the analysis, under the framework of analyzing this question that Taylor says should be used. And Taylor says, instructs that you look at the plain language of the two federal statutes... Yes, Your Honor. Yes, Your Honor. That wouldn't be practical. But here, after Taylor, Taylor changed the framework for analyzing whether a federal crime is a predicate... Excuse me? The Taylor and McCoy applied the Taylor framework. You just said they cited Taylor, right? They cited Taylor, but they weren't asked to apply the framework. The defendants there didn't cite to any language in the statute. They didn't compare the two statutes. They didn't compare 924C to Hobbs Act robbery. All they did was take a turn of phrase in Taylor. That's what McCoy says. They took a turn of phrase in Taylor and said this somehow meant that the plea of Hobbs Act robbery wasn't a crime of violence. But they didn't address the statute, and McCoy implicitly recognizes they didn't do a Taylor analysis, because it presented no hypotheticals to this Court under which they would demonstrate that the language of the Hobbs Act... Are you saying that we can do this when there is one case following a Supreme Court case that does this inadequately, that then we are allowed to look, but we can't do it two years later or ten years later? I mean, I want some kind of line to know when I can look behind what a court has done. Now, it may be that it's whether what has happened is egregious, that an argument that was perfectly powerful and could have been made was not made, then I'm allowed to look at it at any time. Was what was going on here so egregious? Wasn't McCoy really thinking it was applying the whole thing? The line here is that the framework for analyzing a problem has been changed by the Supreme Court, and the litigants are responsible for making the arguments to the Court, presenting arguments to the Court. I'm not saying that McCoy panel did anything wrong. The defendants in that case did the wrong thing. After Taylor, they didn't come to the Court and make the arguments that Taylor says you have to make. You have to compare the language of the two statutes, use the categorical approach, and argue to the Court whether the minimal conduct punishable under this federal statute here, the Hobjack robbery, whether that minimal conduct meets the fourth clause, the fourth element of 924C. And the McCoy defendants didn't do that. They didn't compare the language. And after McCoy, you don't need to point to an actual case. You can use hypotheticals. And the McCoy court notes the defense didn't even attempt to present the Court with any hypotheticals. But we present two. One, showing that fear of injury to property can be accomplished by generating a fear of causing an economic loss through speech. Speech to threaten is not the use of force, but speech, for example, if you could threaten a business like a restaurant that unless they pay you money, you will wage a defamatory campaign online saying that the food made you sick. And secondly— negative reviews about your restaurant, that person would be prosecuted for Hobjack robbery. The question is not whether in the real world. Well, we have said that. I mean, we've said when we apply the categorical approach that it's not just a creative exercise and imaginary hypotheticals. There has to be a realistic chance that somebody would be prosecuted for that, right? The Court has said that. But Taylor changed that. Taylor said you don't—the Duenas-Alvarez principle that you have to showcase doesn't apply. So you think Taylor abrogates our precedence saying it has to be realistic? And now it's just—if it's imaginable that based on the literal language you could have some prosecution that doesn't involve force, but no one has ever been prosecuted or will ever imaginably be prosecuted under that theory, it still would not be a crime of violence? That's right, Your Honor. That's right. And it's because we have two federal statutes. Taylor says we have two federal statutes. You just look at the two. Isn't the appropriate thing in that situation to say if no one is ever prosecuted for that, it has been that isn't what that statute means? That it might be read because you can read, you know, you know, and I know there are some people who say that language gives you the answer, but that's nonsense. We know that language can sometimes be read some ways and sometimes can't. And if no one is ever prosecuted under language which could be stretched to do something, we should say that language doesn't mean that. Well, two things. The courts have interpreted the language of the Hobbs Act. Properties interpreted broadly and can mean an economic interest. And secondly, the public record doesn't show how many cases were, doesn't give a full picture of what actually is prosecuted. Most cases that are prosecuted don't come before this court or any other court. People plead guilty, you get convicted, and they move on. But Taylor makes clear that we don't have to look in the real world because under the categorical approach, you just look at the minimal conduct. That is punishable, looking at the language of the statute. You don't need a real case. It has to in every instance. Yes, there's a federal case, so it's imaginable. So if something works in practice but doesn't work in theory, we should follow theory. No. It's not theory if you look at the language of the statute. For example, Hobbs Act robbery allows a prosecution for making a threat against the property of a relative or member of the family. Well, that could be the defender himself because a relative is any relative. The word a is usually interpreted broadly, member of his family, so you have a relative or member of his family. That's pretty broad. And the government even concedes that in 1951a the language that you could threaten violence to any personal property could be the defendant himself in 1951a. So they accept in 1951a that a person could be, that that language permits a prosecution if a defendant threatens to kill himself. And it's interesting. Wait, can it be? I mean the statute defines a robbery as the unlawful taking or obtaining of personal property from the person or in the presence of another against his will by means of act to threaten force or violence or fear of injury, immediate or future, to his person or property. Yes, Your Honor. To his person or property or property in his custody or possession or the person or property of a relative or member of his family. Oh, I see. Or anyone in his company at the time of taking. And so since you, the robber, are in the company of the person you're robbing, if you threaten yourself, you might accomplish a Hobbs Act robbery. Is that the idea? No, the idea we have is that any relative could be the defendant himself. Oh, so if you're robbing a relative. That's right. So if I go and rob my cousin and I threaten to shoot myself in the head unless he gives me money, I've accomplished a Hobbs Act robbery. Yes, and Nicola, the defendant, made that argument. That was his example. A person threatens to commit suicide unless the parent gives them money. And that was rejected by this court in Nicola in 2020 because he couldn't point to a natural case, because Dwayne Alvarez still controlled. But after Taylor, now the government, in this brief, in this case, the government admits that 1951A isn't a Hobbs Act, I mean is a Hobbs Act robbery and doesn't fall under 924C because the defendant could be committing violence against himself. The defendant could threaten himself. The hypothetical that the defendant placed in Nicola, the defendant placed in Nicola, the government apparently agrees with. As I said, that defendant lost. He said the defendant, in Nicola, the lawyer said the defendant could commit a Hobbs Act robbery, again, violating 951A by threatening to kill himself unless his parent gave him money. He lost because he couldn't cite a case or any actual instance. Now the government agrees that any person in that, in 1951, could be the defendant himself. So a relative in 1951B1 can be any relative, an in-law, a blood relative relation, a third, fourth, fifth cousin. It could be any member of the family, no matter how disturbed or whatever their problems are, who threatens to shake down a wealthy member of the family by threatening harm to themselves. The categorical approach, as this court notes, many times leads to strange results. This court noted that in Chappelle. But the Supreme Court has no doubt heard these complaints. It always depends on our assuming that our precedent that says it has to be realistic, such that there needs to be a realistic chance someone will be prosecuted, or that has been abrogated by Taylor, right? You don't- You don't come from federal to federal sex. People are actually prosecuted for Hobbs Act robbery under these theories. I'm sorry, repeat the last part? You don't actually contend that people are actually prosecuted for Hobbs Act robbery under these theories. Are these theories that we present? Yes. No. Right. So because it's imaginable, you're saying it fails the categorical approach. It fails the what approach? So you're saying because it's imaginable, it fails the categorical approach. That's your argument. No, because the categorical approach provides a- You look at the minimal- Are you saying that whatever is the precedent with respect to the categorical approach generally, when you are asking the question from Taylor, Taylor allows you to look at hypotheticals which are not realistic, which in other contexts we cannot do. Is that your argument? Yes. That is the case. Before Taylor, the court, this court, placed a limitation on the categorical approach. Right? Requiring a natural case. Because you're saying that what Taylor is doing is implicitly making a narrow area limitation on what the previous precedents of a categorical approach said. But don't we ask the court to be a little bit clearer when it does that? Well, the court explicitly said that Duenas-Alvarez principle doesn't apply because we have two federal statutes. You can just look at the language. And the categorical approach, which yields strange results, it only asks whether looking at this language, is a minimal conduct punishable? If you just look at this language, is a minimal conduct punishable? Does it always- The standard approach after Taylor is that when we're evaluating whether a state statute is a crime of violence, we should only look at realistic possibilities under the statute. But when we're evaluating a federal statute, we do not. We just engage in imaginative hypotheticals. That is correct. We can engage in hypotheticals under the federal statute. Because principles of federalism, when a state statute, with principles of federalism, a federal court, according to Taylor, should defer to what actually happens in the state court and to what the state court says they're all means. But in the case of a federal statute, a federal court can just look at the language. What does this language mean? And we're using a categorical approach. And the categorical approach asks about the minimal conduct. It doesn't ask about the usual way. This is what Taylor says. It doesn't ask about the usual way or the ordinary way or any of those things. It just says the minimal conduct, looking at this language, punishable, would meet the fourth clause of 924C. And it doesn't. Can I just, before you sit down, say something about why your flight is banned by the appeal waiver in his plea agreement? Well, two reasons. First of all, it is a guilty plea. The district court told him that the guilty plea at page 24 of the guilty plea and 55 of the appendix, the district court told him he had an exception to the waiver for any constitutional rights violated or anything fundamental or basic, or if the court sentenced him incorrectly, that he could appeal that. So he couldn't wrongly have waived his right to break this constitutional challenge. So you're saying that actually it wasn't, he didn't sign the plea agreement. He did sign it. It wasn't knowing involuntary because the district court misled him into what, So first of all, does your argument depend on the district court having this caveat, saying something constitutional or basic? No, no. The actual agreement doesn't say that, right? The actual agreement does not say that. All right. So then are you saying that his agreement to the appellate waiver was not knowing involuntary because the district court described it in a different way? Yes. So the plea agreement is invalid because, or at least the appellate waiver part of it is invalid, you're saying, because he was misled into thinking it believed one thing as opposed to another. It's not invalid for all things. It's just that before he pled guilty, before the deal was consummated, the court explained to him what the waiver was. And the court's understanding, this is the court's understanding, is that he had an exception for constitutional rights. So you can't say that this ninth grade dropout, The district court doesn't say you have an exception for all constitutional rights. You know, you might read that to think that there's some kind of constitutional defect in those proceedings by which he entered into the plea. That's correct. Probably what the district court meant, right? I don't know. But it wouldn't apply to all constitutional violations. For example, if there was an evidentiary ruling from the Supreme Court that there was an error, he wouldn't be able to challenge that. This goes to the second part of my argument about why the plea waiver shouldn't apply. Because the plea waiver, there are always exceptions when there's a fundamental right to the enforcement of plea waivers. When something involves a fundamental right. And it's a fundamental right not to be convicted of a crime, not to serve prison, be convicted for something that no longer is a federal crime. Particularly when it's been found to be unconstitutional by the Supreme Court. And it's been made retroactive by the Supreme Court. Two cases on collateral review. Well, 924C has not been found to be unconstitutional. It's just that the definition of crime of violence is modified by a constitutional ruling. But he was not considered an unconstitutional statute. That's not exactly right. Well, the residual clause is unconstitutional. Even if there's further legal developments that you can't imagine, the appellate waiver is still enforced, right? Right, right, right. So you're saying that even though we've said that generally, here the further legal development is just so important that we shouldn't adhere to that? Yes. It's just of a different order. Even though the further legal development is this very complex and interesting argument that you made for the first part of your argument. It isn't a direct. But that whole argument depends on the fact, on the residual clause being unconstitutional. And once that happens, then that opens up these other arguments. But in this court's case in Sanford, the person was pleading, the person was trying to contest a citizen guideline calculation. He wanted to argue that the career figure guideline was unconstitutional after Johnson. But that's a sentencing issue. It's not something that's fundamental as you're being, you're serving a sentence for a crime that no longer is a federal crime. Why is it not? I mean, so if after Johnson, you know, this sentence that was imposed on you was unconstitutional, isn't that like a much bigger, closer connection to the unconstitutionality? In this case, where it's the interaction of different statutes, statutory definitions? You see what I'm saying? So the sentence is unconstitutional, like Johnson says, right? Well, it's the residual clause. You have to knock out – the case depends on both. It depends on Johnson and Davis and Taylor. If you're in prison and the court has said in a ruling that implicates the Constitution that this sentence is not allowed to be imposed, why is that less fundamental than when it's the statute of conviction as opposed to the sentence? Because it's no longer a crime under our argument if we prevail on this point. I guess I get that. If you're in jail for something that's no longer a crime, that's more fundamental than if you're serving an unlawful sentence for something that is a crime. Even though it does seem like in both cases something not good is happening to the defendant, right? There are a lot of things not good that happen to defendants. Like, for instance, like I said, if they were changing the evidentiary rules so that now he would have been better off had he gone to trial, or if there's some change in law that allows you to move for suppression that you wouldn't have had available before, things change all the time, but those aren't as fundamental as what occurs here. So if a person makes a viable argument that they're in jail for under statute, that is no longer a crime. Yeah, well, in fact— That argument should be heard. That's what we held in Treasement, and where we held that 2241 might be available, even when 2255 was not available, in a situation where it was a second successive petition, but something was not a crime as against the normal situation when it was doing it. Yes, sir. But 2241 has been used in that, and by the Supreme Court as well, so it's a possible distinction. Yeah, the court provides exceptions, and it doesn't have an exclusive list of what they are, but among those are something that involves some kind of fundamental miscarriage of justice, some fundamental right in the—I don't have the precise language, but some fundamental constitutional— when something fundamental like the crime is no longer a crime is implicated. Yes, yes, Your Honor. After—yeah, when that occurs, based on a constitutional—a determination that it was a constitutional violation, and the defendant makes a plausible argument, before the court, the court should hear it, just hear that argument, and not enforce the waiver. Okay. So if it were not a constitutional violation, right, so if, in fact, the decision in Taylor were not about constitutional vagueness, but there was just a decision from the Supreme Court that said, actually, we've looked more closely at the categorical analysis for Hobbs Act robbery conspiracy, and we've decided it's not a crime of violence, but it doesn't implicate the Constitution, it's just reading the statutes correctly, then he should not be excused from the appellate waiver because the Constitution would not be implicated. Well, he would still be— Even though the thing is no longer—would no longer be a crime of violence. It's the same result, but you're saying because the Constitution was involved, that makes it fundamental. Is that right? Well, with this addition, the Constitution is involved because 924C itself, part of it was rendered unconstitutional in 2019. What about my hypothetical? I'm saying you can get to the same result where Hobbs Act robbery conspiracy is no longer a crime of violence just based on statutory analysis. If that had happened in this case, do you think your client should still be excused from the appellate waiver? If the definition of crime of violence when my client was convicted was just 924C in the elements clause, no residual clause, just the elements clause, then this would just be a statutory issue solely. And in those circumstances, probably a defendant probably couldn't escape his waiver. So you're saying there are circumstances in which somebody is in jail for something that's no longer a crime, but as long as the reason for that is a statutory analysis, that's okay. But if it's a constitutional analysis, then there's an exception to appellate waivers. Yeah, if he constitutionally could have been incarcerated back in whenever he was convicted or pled guilty and the statute changed, then no, you don't get the benefit of that sort of change in the law. You would need something fundamental to occur. Something fundamental is a constitutional violation and your crime, your conduct is no longer a crime and wasn't a crime at the time. Because looking at it using a categorical approach, even at the time Mr. Harris was convicted, the residual clause was, had not been declared unconstitutional, but the principles enunciated by the Supreme Court in Johnson and Davis show that it was unconstitutional at that time. And so he's convicted under non-constitutional statute. Yes, Your Honor. We've been very generous with your time. Oh, yes. Thank you, Your Honor. Thank you very much. Thank you, Your Honor. May it please the court. My name is Michael Gibaldi. I'm an assistant United States attorney in the Eastern District of New York. To resolve the numerous charges against him, the defendant in this case pleaded guilty to two crimes, Hobbs Act robbery conspiracy and a violation of 18 U.S.C. 924C, pursuant to a plea agreement with the government. But the 924C conviction at issue here was predicated not just on a robbery conspiracy, but also a completed Hobbs Act robbery that the defendant committed. There is legally sufficient proof of that completed robbery in the record, and this court recently reaffirmed in McCoy that even after Taylor, a completed Hobbs Act robbery remains a crime of violence for purposes of Section 924C. And that's the end of the case. In our view, Your Honor, that is all that is required here to hold otherwise. You're skipping over the appellate waiver question. We should address the question as to whether he was properly convicted. I think that the appellate waiver is another way for the court. I think we have multiple arguments or multiple paths. Before we get to the other argument, can I just ask about the appellate waiver? So what did the judge mean when he said you can still appeal if there's anything constitutional or fundamental or basic? Your Honor, my best understanding in reading the record as to what the judge meant is I believe what Your Honor was referring to a little bit earlier, which is that he was getting at if there's something sort of fundamental or basic, a problem in the procedure, in the plea procedure, or something that led up to the plea procedure, or, for instance, if the defendant were actually pleading guilty to something that at the time wasn't a crime, that something like that, there might be some... If the time wasn't a crime, but it wouldn't encompass a later development? I don't think so, Your Honor. But how can you be expected to understand that? I mean, first of all, I guess, does it matter? So I think opposing counsel recognized that this comment by the judge was not actually in the plea agreement. So what do we do with the comment by the judge? Well, I think it has to also be viewed in the context of the entire plea colloquy. There were multiple occasions where the judge ensured that the defendant had read the entirety of the plea agreement and had sufficient opportunity to review it with counsel and understood all of its terms. And so, and you're right, that the plea agreement itself makes no exception for constitutional claims or really any sort of claims that he might bring. But you're saying he would still, even, it would be a constitutional problem if he were being convicted of something that wasn't a crime at the time, right? Is that what you're saying? I think what I'm saying is that would certainly be a, it would be a tougher case for the government to enforce the appeal waiver given the common... No, the Supreme Court says that the residual clause is unconstitutionally vague. It means that it was always unconstitutionally vague, right? So this was never a crime of violence. Well, you're certainly right that the statute didn't change between the time the defendant pled guilty and... We might have serious problems if there were any issue on the merits. But why should we talk about those if in fact we have already held that this, what he did and said he did on the record that he said that is enough is a crime of violence and we're being asked to go all sorts of hypotheticals where it might be something else and then that raises wonderful questions of when something might or might not be, which for God's sakes, let's decide when we have a case that raises it. Your Honor, I certainly agree that one way that the court can resolve this case, in my view... No, but it's not just a matter of one way. It's a matter of what we ought to do, which is whether we focus on something that is clearly before us  I spent my life speculating before I became a judge. I certainly think that this court ought to follow McCoy to the extent the court is reaching the merits of the claim. But the question is not whether we follow McCoy, right? The question is whether there actually is sufficient proof that he did a completed Hobbs Act robbery, right? Yes, Your Honor, that is the focus of the negotiation. Right, so in fact the plea agreement says that he pleaded guilty to a Hobbs Act robbery conspiracy and to the 924C charge, right? So if we're looking at the plea agreement, we don't have proof that he committed a crime of violence that's predicate for the 924C charge, right? That's right, Your Honor. So your whole argument depends on the idea that when the court says to him, and with respect to the gun charge, count for that you carried a weapon or weapons in connection with those crimes that I just referred to, he's referring to the underlying robberies as opposed to the conspiracy. That's right, Your Honor. The conspiracy is also a crime, right? The conspiracy is one crime. I think that... But we have held that where the record shows that somebody committed a robbery, that that can be taken into account for 924C, even though what he pled to was only conspiracy. We have a case on that. That's right, Your Honor. In Dusard, the court held... But the only thing in the record that shows that he committed a completed robbery is that exchange with the judge, right? Well, we have the... Why did you have the allegations? We have the allegations in the indictment, the plea colloquy, and we also have the pre-sentence report, which is another thing that the court held, and this court held in Dusard, is something that the court can consider when deciding whether there's legally sufficient proof of a valid predicate for the Section 924C offense. And here, the pre-sentence report makes very clear in paragraph 10 that the completed Hobbs Act robbery predicate that was charged in count three of the indictment was, in fact, an armed robbery that the defendant committed, and there was no dispute at any point in the proceedings below that those paragraphs were inaccurate. And so just as in Dusard, where the court held that unchallenged portions of a PSR can be considered... And opposing counsel hasn't argued against that. Opposing counsel's argument is that McCoy isn't binding on us because it didn't make a right analysis. But opposing counsel is never arguing that if McCoy were, in fact, to be followed with respect to this, what was said about a commission of a robbery and so on and so on was enough. So that that isn't argued either. Is that your understanding of the defendant's argument? Does he not also say that there wasn't sufficient proof that he committed a completed robbery? My understanding is that the argument about legally sufficient proof was raised in the initial round of briefing and then the supplemental round of briefing addresses this issue of whether a completed Hobbs Act robbery... Right, the whole idea about whether we should reconsider McCoy doesn't even come up until the supplemental briefing. That's right, Your Honor. So the main argument in this appeal is about whether there was sufficient proof that he committed a completed Hobbs Act robbery. That's right, Your Honor. And the court doesn't reach the... And the district court, the whole decision of the district court is based on this colloquy at the hearing where I accepted the plea. He admitted that he did a completed Hobbs Act robbery and that's the legally sufficient proof. That's correct, Your Honor. And I do just want to point out with respect to the plea colloquy because I do think it's important that it's not just that the government is focusing on when the district court says crimes instead of crime, that it's just, that's the only thing that we're hanging our hat on. It's the broader context of the pages leading up to those questions starting on page A58 in the record. The district court, based on the stipulations, the fact that the defendant was stipulating to a number of robberies having been committed, the district court was actually prepared to go one by one and ask, did you commit this robbery, this robbery, and this one? Well, he didn't. And he didn't. Defense counsel cut that short. In fact, the defense counsel did it precisely for the reason that we're just pleading guilty to Hobbs Act robbery conspiracy. So we don't need to say that he committed any completed robberies, right? That's right, Your Honor. I don't know exactly what the district judge was going to say. It might be the district judge was going to say, okay, so you conspired to do this robbery, conspired to do this robbery, right? It's not necessarily going to be, we don't know because he never did it, but he wouldn't necessarily have had to say you completed all of these robberies, right? Well, I think it was important for him to do that just because the defendant was stipulating to having done those crimes as part of his plea agreement. And I think the reason it matters is because when he's talking about those robberies, those robberies, plural, throughout, when he finally gets to the question about did you carry a weapon in connection with those crimes that I just referred to, I think that's why we interpret that to mean the crimes, the robberies that are enumerated in the plea agreement. The ones that he just referred to, right? So the thing that he just referred to was, so you agree that you entered into a conspiracy to commit all these robberies and all the other crimes as set forth in paragraph two of the plea agreement. And then he says you carried a weapon in connection with those crimes that I just referred to. And so you're saying it refers to the robberies, not the conspiracy to commit the robberies. That's right. And even if you look on, I'm looking on A59, just a few lines up from where you started reading, the court asked if you do embrace all of those robberies that are set forth in paragraph two of the agreement. And so that's why we interpret the later questions, the later question about carrying a weapon or weapons in connection with those crimes to refer to the robberies. I don't know about embrace all these robberies. I mean he says – the defense counsel says I think the law requires as far as an agreement to the defendant have to have done something in furtherance of the agreement, but I don't think we have to go through each and every one to satisfy that, meaning that we're just talking about a conspiracy. And then he says so do you embrace all these robberies that are set forth in paragraph two of the agreement as far as the gun possession and possession of narcotics? I mean you could understand that as being was it – do you embrace that you conspired to commit all these robberies? It's all in the context of pleading guilty to conspiracy, right? Well, it's that and then also with respect to count four, which was the 924C count, the defendant was then asked a follow-up question whether in the course of at least one of those robberies or more if he showed a firearm to the intended victim. But at the time they thought that the Hobbs Act robbery conspiracy was a crime of violence, so they could have been asking – this is a normal way to read this exchange – that you were carrying a firearm in connection with your conspiracy to commit Hobbs Act robbery, right? I think that's certainly part of it, but I do think that the allocution goes further in particular because it – No, just a different thing. Do we not have a case – we have a case before us that was argued of a question of whether you can bring habeas after an agreement so that that would cover even this more broadly, and that case is before us and was argued in its precedence. So if we start going down the line of what there was an agreement, whether there was a valid waiver, we would probably have to wait for that case, wouldn't we? Your Honor, honestly, I'm not aware of the case that you're referring to. Let me – I think it's – I don't think I have the name on here. Well, that's okay. That's not a problem. We can work out that. But just to sum up, the government's position is that essentially there are – we have two arguments for affirming the district court's order, the first being the plea agreement's waiver provision, which I'll note conferred meaningful benefits for the defendant in this case. The plea agreement provided for the dismissal of another 924C charge, which was predicated on a drug trafficking crime, so it's unquestionably still valid. And so the court should enforce the plea agreement, including the waiver here. But also, even if the court doesn't reach that issue or disagrees with that position, the government still has the argument that there is legally sufficient proof of a completed Hobbs Act robbery, which remains a crime of violence in this circuit. What about the argument in the supplemental brief that was the focus of opposing counsel's argument that Hobbs Act robbery, even completed Hobbs Act robbery, is not a crime of violence under Taylor? I know you have one argument as well that's just precedent, so I get that. But what about the idea that after Taylor, you just rely on hypotheticals and it fits the terms of the statute? So I'm happy to address that argument. Sort of putting – assuming – putting McCoy aside, I don't think that Taylor requires the sort of absurd – frankly, absurd interpretations of federal statutes in order to do this analysis. Even if Taylor did expand the concept of what a court can do in terms of – that it doesn't require a defendant to point to a specific case where the statute was applied in a certain way, the arguments that defense counsel is making about how to interpret robbery go – they're just not required by the statute. So he makes two arguments, one being this idea that you can instill fear in a person by threatening to commit non-tangible economic harm to property, like going into the restaurant and saying, I'll give you a bad review. That's just not – we don't think that's supported by the text of the statute. All of the cases that are cited for the proposition that fear of injury to property can be the sort of non-tangible economic harm are extortion cases. So you're saying that in order to make the argument that opposing counsel makes, you first have to read the statute more broadly than its language justifies, and then having read that statute that way, come up with a hypothetical that is never applied and say because of that, a categorical approach applies. But you have to take two steps. The first step is to read the statute in a way that ordinarily one wouldn't read it, or that it hasn't been read even. Yeah, we certainly agree that it certainly requires that sort of mental gymnastics or creativity, but I think the plain meaning of the words here in terms of threatening actual or threatened force, violence, or fear of injury, all of those words, as we contend in our brief, should be read together, in particular since they're sort of – So you're saying it's hard to understand the language that says fear of injury to property as encompassing writing negative reviews about somebody's restaurant and thereby harming their goodwill. That's right, and I think – That way it's just inconsistent with the text. That's right. Even though the goodwill of the reputation of the restaurant, I guess, is property, that's just nobody would talk about fear of injury to property as encompassing reputational harm. That's right, and we cite to – it's a district court opinion, but we think persuasive written by Judge Nathan, the Pena case, really doing a very close textual analysis of the meaning of force, violence, or fear of injury and why those three terms – I think Judge Nathan has done enough work for us today. We certainly find that persuasive in that the words really need to be read together and that force and violence give meaning to what fear of injury means in this context,  and so for that reason, we don't think that the argument made by defense counsel is persuasive. Well, it says actual or threatened force or violence or fear of injury, so doesn't fear of injury have to be something other than actual or threatened force? In this context, in particular given that – so force and violence are certainly overlapping terms in the sense that – You said they're all overlapping. We're saying that they're overlapping, and so that's why – that's sort of persuasive. You said fear of injury doesn't actually add anything to the statute because if you're using the means of threatened force, you're also going to be using the means of fear of injury. And so – Yes, but don't we stop before that because McCoy said that robbery is force, so now we have all sorts of hypothetical reasons why McCoy didn't mean what it said. So, you know, we're one step behind that, and maybe we could figure out things because of which McCoy might have come out differently, but we do have McCoy. We certainly agree that McCoy is binding precedent and does not require the court to do this analysis. Okay, but I'm still curious about that. So why don't we say something about the cousin who's threatening to shoot himself in the head or the child? Why isn't that – doesn't that fit within the terms of the statute? Sure, so that's the second – essentially the second hypothetical that they pose. Again, we think that that – again, nothing in Taylor requires the court to read statutes in a, frankly, patently absurd way. And it goes beyond just that the defendant can't point to a specific case. I think it's just telling that the statute has never been applied that way because nobody has understood the statute to mean that. And I think textually, even, there's a lot in the text itself that the court can look at. And again, you would be asking us to say that McCoy was wrong in not considering the fact that the statute might mean these things. See, that's basically my problem because if I start doing that, then there is no holding of this court that I couldn't do that with. Yes, again, we certainly – But I couldn't find a reading of something behind that because of which we're holding of the court. Okay, again, yes, assuming that we could overcome McCoy, I'm just curious what your answer was about what in the text precludes the reading. But I won't belabor the point, just I'd like to satisfy my curiosity. Yes, so I think two things in the text of the statute that really take this from the realm of just a realist possibility to an absurdity. The first is that if you look at, unlike the provision of the Hobbes Act, which says that you can violate it by committing or threatening physical violence to any person, the definition of robbery specifically enumerates certain specific individuals that have to be the object of the violence or the threat of violence. And that would be the robbery victim himself or herself or a relative or member of his family or somebody else that's in the company of the robbery victim at the time of the robbery. And so reading all of those together, the natural way to read that is that that is enumerating different people other than the defendant who are either the robbery victim himself or somebody close to the robbery victim. And so you're saying that even though literally it could encompass the perpetrator himself being a relative, that's just not the natural way to read it. It's not the natural way to read it for that reason. And also because the essence of robbery, the phrase here, is against his will. The difference between robbery and extortion is whether robbery is essentially overcoming someone. You're taking property from somebody against his will, right? So a parent doesn't want to see the child die. So it probably is true that if a child threatens to kill him or herself, the child might extract something from the parent against the parent's will because they don't want to see the self-harm happen. Why don't I answer this one and then wrap up? Yes, Your Honor. I think that we still think that that would really fall more into the category of extortion, which the Supreme Court has said the essence of extortion is consent, but it can be a grudging consent like a parent saying, I really don't want you to do this, but I'm going to give in to your demands, and that that would be more akin to an extortion than a robbery. And so if the Court doesn't have any further questions, I'll rest on my brief. Thank you. Thank you, Your Honor. Mr. Fields, you're reserved two minutes for a vote. Thank you, Your Honor. Can I ask before you jump into everything else, what about the pre-sentence investigation report, which says that your client committed a completed robbery, and that's the predicate for the 924C charge? Yeah, so when it comes to the pre-sentence report, that's just, they discussed the fact that his admissions went to the guideline calculation. He just wasn't going to challenge the guideline calculations, but that's just a preponderance of the evidence standard. He just says on page 52, his lawyer says, We are explaining to Mr. Harris that the guidelines are advisory only, and that there are other factors that the Court will consider. So you're saying he had no reason to challenge it? But it is proof in the record that he did a completed homicide robbery, is it not? It's not proof beyond a reasonable doubt. Well, he's only sufficient in that context, would you have to ponder that? Well, you saw that the person actually – In Dusard, the person pled guilty, admitted the crimes at the guilty plea while under oath. It's like the first thing Dusard says, and then it discusses all these other aspects of the case, the evidence against the defendant and everything. But that defendant pled guilty to the crime. And in the Johnson case that the government cites, that defendant was convicted after trial. The count was vacated for multiplicity reasons, not because of any problems with the findings that the jury made. So the cases that this Court has had before it, those defendants admitted the crimes or those crimes were found by a jury beyond a reasonable doubt. And the government agrees that 1951A could refer to the defendant himself, where it says a defendant who commits, threatens physical violence to any personal property and furtherance of a plan to do anything in violation of this section. And the government, on page 16 of its supplemental brief, says it agrees that a violation of that provision does not constitute a crime of violence under Taylor. Because the provision threats of violence, the provision expressly applies to threats of violence against, quote, any person, and any person could in fact mean any person, including the defendant. So any relative can be any relative, including the defendant in 1951B1, or any family member of the defendant. And Ms. Calabrese, I appreciate your frustration in dealing with the categorical approach, but that's the law, that we apply the categorical approach. And Taylor says you can use hypotheticals. The hypotheticals help illuminate, because the categorical approach is just looking for the least, the minimal conduct under this statute, under a Hobbs Act robbery. What is the minimal conduct punishable? And is that minimal conduct require the use of physical force? And the minimal conduct, if you look at the language of statute, does not require this sort of force at 921C. Even though in Taylor we said it did, but you say that we should read Taylor differently. Okay. McCoy court didn't do anything wrong. The defendants there did not ask the court to analyze the issue under the Taylor framework, Your Honor. So they never were presented with hypotheticals. We presented them with hypotheticals. They were asked to compare the text. All the defendant did was make some reference to some term phrase in Taylor that meant nothing, and also he cited Chappelle, but Chappelle, he probably cited, he referred to the part of Chappelle that found the Hobbs Act robbery isn't a crime of violence under the guidelines. But the guidelines definition is different. The guidelines definition is different from the Hobbs Act. So they didn't make this argument to the court. This is the first time this court is presented with this argument, and the court should consider this argument despite whatever is in waiver, because it's very fundamental. It's a fundamental right. The Bosley case says that, and it's discussed in our brief. Thank you, counsel. I think we have your argument. Thank you, Your Honor. Thank you both. We'll take the case under advisement, and that concludes our business for today. So I'll ask the courtroom deputy to adjourn. Court is adjourned.